Case No. 23-11703

In the United States Court of Appeals
for the Eleventh Circuit

---

Jamaal Bilal,
f.k.a. John L. Burton,
a.k.a. Superman,
Appellant

v.

Jeffrey Benoit, et al.,
Appellees

---

On appeal from the United States District Court
for the Northern District of Florida

## Appellant's Opening Brief

Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
tvburch@uga.edu
(706) 542-5236

<u>**Certificate of Interested Persons, Jamaal Bilal v.**</u>
<u>**Jeffrey Benoit, et al., Case No. 23-11703**</u>

We file this Certificate of Interested Persons and Corporate Disclosure Statement in accordance with Eleventh Circuit Rule 26.1-1. The persons and entities known to be interested in the outcome of this case are:

1. Barrows, Joshua Christopher, *Counsel for Appellee/Defendant Dr. John Hodges*

2. Benoit, Dr. Jeffrey, *Defendant*

3. Bilal, Jamaal Ali f/k/a John Burton, *Appellant/Plaintiff*

4. Burch, Thomas, *Counsel for Appellant/Plaintiff Jamaal Bilal*

5. Cannon, Hope T., *United States Magistrate Judge*

6. Carothers, Alicia D., *Counsel for Appellee/Defendant Sheriff of Escambia County, Florida*

7. Cole, Scott A., *Counsel for Appellee/Defendant, Dr. John Hodges*

8. Cole, Scott & Kissane, P.A., *Counsel for Appellee/Defendant Dr. John Hodges*

9. Davis Jr., Bill, *Defendant*

10. DePass, Dr. Carole, *Defendant*

11. Director, Florida Civil Commitment Center, *Defendant*

12. Doe, John, *Record Supervisor of Escambia County Jail, Potential Defendant*

13. Harris, Shevaun, *Secretary, Department of Children & Family Services, Defendant*

14. Hawkins, Jennifer A., *Counsel for Appellee/Defendant Sheriff of Escambia County, Florida*

15. Hodges, Dr. John, *Appellee/Defendant*

16. Itch, Mark, *Secretary, Florida Department of Corrections, Defendant*

17. Kanner, Kristen, *Director, Department of Children and Families SVP Program, Defendant*

18. Keith, Thomas, *Office of Federal Public Defender, Defendant*

19. Koskey, Danielle, *Defendant*

20. Moody, Ashley, *Attorney General, State of Florida, Defendant*

21. Parker, Dr. Karen, *Defendant*

22. Pritchard, Dr. Gregory, *Defendant*

23. Ringer, Rook Elizabeth, *Counsel for Appellee/Defendant Dr. John Hodges*

24. Roe, Jane, *Records Supervisor of Escambia County Jail, Potential Defendant*

25. Sawyer, Dr. Donald, *Defendant*

26. Shaw, Dr. Ted, *Defendant*

27. Sheriff, Escambia County, Florida, *Appellee/Defendant*

28. Sheriff, Santa Rosa County, Florida, *Defendant*

29. Simmons, Chip, *Sheriff, Escambia County, Florida, Appellee/Defendant*

30. Steele, Mike, *U.S. Naval Investigative Services, Defendant*

31. Secretary, Department of Children and Family Services, *Defendant*

32. Savona, Therese A., *Counsel for Appellee/Defendant, Dr. John Hodges*

33. Warner, Timothy M., *Counsel for Appellee/Defendant Sheriff of Escambia County, Florida*

34. Warner Law Firm, P.A., *Counsel for Appellee/Defendant Sheriff of Escambia County, Florida*

35. Wetherell, T. Kent III, *United States District Court Judge*

36. Wood, Craig Richard, *Counsel for Appellee/Defendant, Dr. John Hodges*

37. Yarbrough, Alyssa M., *Counsel for Appellee/Defendant Sheriff of Escambia County, Florida*

## Statement Regarding Oral Argument

We respectfully request oral argument. This case presents a question regarding the application of *Heck v. Humphrey*, 512 U.S. 477 (1994) that has split both the circuits and several panels of this Court. Also, this is a complicated case. Mr. Bilal has sued multiple parties under multiple theories regarding claims that, in some cases, date back 40 years. We have raised some of those claims here, but not all, and we would like oral argument to ensure that the Court has no unanswered questions regarding which claims we are presenting and why.

# Table of Contents

Statement Regarding Oral Argument .......................................................................... i

Table of Citations.............................................................................................iv

Statement Regarding Jurisdiction ........................................................................ viii

Statement of the Issues................................................................................... 1

Statement of the Case .................................................................................. 2

Standard of Review........................................................................................ 8

Summary of the Argument.................................................................................. 9

Argument................................................................................................ 11

   I.   The *Heck* bar does not apply to Mr. Bilal's malicious prosecution
      claims because the defendants did not raise it and because Mr. Bilal
      was not in custody when he filed his complaint ............................................ 12

      A.  The defendants forfeited any *Heck* affirmative defense ............................ 12

      B.  *Heck* does not apply to plaintiffs who are no longer in custody ............... 15

  II.  The statute of limitations has not run on Mr. Bilal's malicious prose-
      cution claims that are based on his stay at the Florida Civil Commit-
      ment Center ................................................................................. 21

 III.  Mr. Bilal has stated a plausible claim that the Escambia County Sher-
      iff's Office violated the Fourteenth Amendment by temporarily plac-
      ing him in a penal facility during his civil commitment ................................ 29

 IV.  Even if district courts have the "inherent authority" to dismiss "frivo-
      lous" claims, the district court abused its discretion in exercising that
      authority here when it dismissed all claims against the unserved de-
      fendants................................................................................... 33

Conclusion ............................................................................................................... 36

Certificate of Compliance

Certificate of Service

# Table of Citations

**Cases**

*Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs,*
   405 F.3d 1298 (11th Cir. 2005) ................................................................. 17-20

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................. 26-27

*Bell v. Raoul,*
   88 F.4th 1231 (7th Cir. 2023) ................................................................... 14-15

*Bilal v. Geo Care, LLC,*
   981 F.3d 903 (11th Cir. 2020) ........................................................ 5, 8, 30-33

*Christy v. Sheriff of Palm Beach Cty., Florida,*
   288 Fed. Appx. 658 (11th Cir. 2008) ............................................................ 18

*Crittindon v. LeBlanc,*
   37 F.4th 177 (5th Cir. 2022) ..................................................................... 13-14

*Davis v. Kvalheim,*
   261 Fed. Appx. 231 (11th Cir. 2008) ............................................................ 34

*DeWalt v. Carter,*
   224 F.3d 607 (7th Cir. 2000) ........................................................................ 21

*Dixon v. Hodges,*
   887 F.3d 1235 (11th Cir. 2018) .................................................................... 13

*Doe as Next Friend of Doe #6 v. Swearingen,*
   51 F.4th 1295 (11th Cir. 2022) ................................................................. 22-25

*Donaldson v. O'Connor,*
   493 F.2d 507 (5th Cir. 1974) ........................................................... 23, 25-26

*Estate of Malkin v. Wells Fargo Bank, NA*,
    998 F.3d 1186 (11th Cir. 2021) ................................................................ 28-29

*Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*,
    678 F.3d 1199 (11th Cir. 2012) ................................................................ 36

*Guerrero v. Gates*,
    442 F.3d 697 (9th Cir. 2006) ................................................................ 16

*Guthrie v. U.S. Gov't*,
    618 Fed. Appx. 612 (11th Cir. 2015) ................................................................ 34

*Harden v. Pataki*,
    320 F.3d 1289 (11th Cir. 2003) ................................................................ 17, 19-20

*Harrigan v. Metro Dade Police Dep't Station #4*,
    977 F.3d 1185 (11th Cir. 2020) ................................................................ 13

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ................................................................ 2, 7, 9, 11-21

*Maldonado v. Baker Cty. Sheriff's Office*,
    23 F.4th 1299 (11th Cir. 2022) ................................................................ 35

*McDonough v. Smith*,
    588 U.S. 109 (2019) ................................................................ 19

*McLish v. Nugent*,
    483 F.3d 1231 (11th Cir. 2007) ................................................................ 18

*Morrow v. Fed. Bureau of Prisons*,
    610 F.3d 1271 (2010) ................................................................ 18

*Nance v. Ward*,
    597 U.S. 159 (2022) ................................................................ 19-20

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ................................................................ 27, 36

*Paez v. Sec'y, Fla. Dep't of Corrs.,*
    947 F.3d 649 (11th Cir. 2020) ................................................. 27, 29

*Pedraza v. United Guar. Corp.,*
    313 F.3d 1323 (11th Cir. 2002) ........................................................ 8

*Reilly v. Herrera,*
    622 Fed. Appx. 832 (11th Cir. 2015) ............................................ 18

*Smith v. HSBC Bank USA,*
    679 Fed. Appx. 876 (11th Cir. 2017) ......................................... 34-35

*Smith v. Shorstein,*
    217 Fed. Appx. 877 (11th Cir. 2007) ................................. 22, 24-26

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ............................................................... 16-17, 21

*Teagan v. City of McDonough,*
    949 F.3d 670 (11th Cir. 2020) ..................................................... 13

*Topa v. Melendez,*
    739 Fed. Appx. 516 (11th Cir. 2018) ................................... 13-14, 18

*Trustmark Ins. Co. v. ESLU, Inc.,*
    299 F.3d 1265 (11th Cir. 2002) .................................................... 29

*Vickers v. Donahue,*
    137 Fed. Appx. 285 (11th Cir. 2005) ............................................ 18

*Washington v. Los Angeles Cty. Sheriff's Dep't,*
    833 F.3d 1048 (9th Cir. 2016) ..................................................... 15

*Wilkerson v. Georgia,*
    618 Fed. Appx. 610 (11th Cir. 2015) ............................................ 34

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005) .................................................................. 19-20

*Wilson v. Midland Cty., Texas*,
    89 F.4th 446 (5th Cir. 2023), *rehearing en banc granted*
    *by Wilson v. Midland Cty., Texas*, 92 F.4th 1150 (5th Cir. 2024) ............... 16, 20

## Statutes and Rules

28 U.S.C. § 1915 ........................................................................................ 35

42 U.S.C. § 1983 ........................................................................................ 19

Fla. Stat. § 394.918(1) .............................................................................. 26

## Secondary Sources

*Bilal v. Moore*, Case No. 3:98-cv-179, Docket (N.D. Fla. May 12, 1998) .................. 25

*Curtis v. Burton*, 1999 CA 001507, Order Denying Release from
Commitment Facility (Escambia County Cir. Ct. Dec. 15, 2017) ........................... 28

FDOC Corrections Offender Network, Jamaal A. Bilal, https://pub-apps.fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=056332&TypeSearch=IR ....................................................... 6, 28

## Statement Regarding Jurisdiction

Jamaal Bilal sued Dr. John Hodges, the Escambia County Sheriff's Office, and others in the Circuit Court of the First Judicial Circuit in Escambia County, Florida. DE #1. He served Dr. Hodges with a summons and complaint on February 8, 2023, and he served the Sheriff's Office with the same on February 10, 2023. DE #6-53 at 1; DE #6-58 at 1. The Sheriff's Office removed the case to the United States District Court for the Northern District of Florida on March 2, 2023, and Dr. Hodges consented to that removal on March 10, 2023—i.e., within 30 days of when the Sheriff's Office was served. DE #1; DE #6-61 at 1-2. The Sheriff's Office notified the district court of Dr. Hodge's consent that same day. DE #6 at 5. On May 8, 2023, the district court dismissed Mr. Bilal's federal claims and remanded his state claims back to state court. DE #30; DE #33. Mr. Bilal timely filed a notice of appeal on May 22, 2023. 11th Cir. DE #1. This Court has jurisdiction to review the district court's final order under 28 U.S.C. § 1291.

## Statement of the Issues

Jamaal Bilal was civilly committed under the Jimmy Ryce Act in 1999. When he was released 20 years later, he sued multiple defendants under various theories in state court. The served defendants then removed the case to federal court, which dismissed Mr. Bilal's malicious prosecution and Fourteenth Amendment claims under Rule 12(b)(6). His appeal of that decision raises four questions.

1. Does *Heck v. Humphrey*, 512 U.S. 477 (1994) bar Mr. Bilal's malicious prosecution claims?

2. Are the malicious prosecution claims barred by the four-year statute of limitations that applies to 42 U.S.C. § 1983?

3. Did Mr. Bilal state a plausible claim that the Escambia County Sheriff's Office violated the Fourteenth Amendment by placing him in penal facilities during his civil commitment?

4. Does the district court have "inherent authority" to dismiss the claims against the unserved defendants as "frivolous," and if it does, did it abuse its discretion in exercising that power here?

<u>**Statement of the Case**</u>

**Nature of the case.** Jamaal Bilal sued Dr. John Hodges, the Escambia County Sheriff's Office, and others related to his 20-year stay at the Florida Civil Commitment Center under the Jimmy Ryce Act. DE #20-1. The U.S. District Court for the Northern District of Florida ultimately dismissed his federal claims under Rule 12(b)(6), finding, as relevant to this appeal, that his malicious prosecution claims were barred by both *Heck v. Humphrey*, 512 U.S. 477 (1994) and a 4-year statute of limitations, and that his periodic placements in penal facilities during his civil commitment were not sufficient to state a claim under Fourteenth Amendment. DE #30; DE #33. Those rulings form the basis of this appeal.

**Background to the malicious prosecution claims.** Mr. Bilal is an honorably discharged Vietnam War veteran who, after he returned from the war, became a civilian employee at the Pensacola Naval Air Station. DE #20-1 at 7. As part of his employment, he had to register his car, phone number, and home address with the Air Station's tag office. *Id.* That is relevant because, sometime around June 1982, an officer from the Escambia County Sheriff's Office contacted the tag office to obtain Mr. Bilal's home address, later using it to arrest Mr. Bilal on the charge of sexual battery against Brenda Smith. *Id.*

Mr. Bilal was subsequently tried twice on that sexual battery charge. *Id.* at 8. The first trial ended in a hung jury. *Id.* The second ended in a conviction and 30-year sentence, but the conviction was reversed on appeal because the state relied on prejudicial hearsay testimony from Ms. Smith. *Id.* Ultimately, Mr. Bilal pled guilty to the charge in exchange for a 3-year sentence that ended in 1985. *Id.* at 8, 11.

Roughly ten years after finishing that sentence, Mr. Bilal was arrested on a second-degree misdemeanor charge of making harassing phone calls to Mark Bednar, an attorney whom Mr. Bilal had contacted in an effort to establish visitation rights with his daughter. *Id.* at 9. At trial, the jury hung, splitting evenly. *Id.* at 10. But Mr. Bilal had been detained while awaiting that trial, and during his detention he had a fight with two of his jailers. *Id.* Based on that, and on a separate probation violation, he was convicted and sentenced to serve 44 months. *Id.* His sentence was set to expire on August 26, 1999. DE #30 at 5.

The day before the sentence expired, though, the State of Florida filed a petition to civilly commit Mr. Bilal as a sexually violent predator under the Jimmy Ryce Act. *Id.* at 6; DE #20-1 at 11-14. Its petition was based on evaluations by Dr. John Hodge and Dr. Jeffrey Benoit, who relied on Mr. Bilal's 1982 sexual battery against Brenda Smith, Mr. Bilal's practice of exposing himself to jail employees during his most recent incarceration, and, unknown to Mr. Bilal at the time, "child rape charges

committed by a serial child molester by the name of Eddie Lee Banks." DE #20-1 at 12-13 (explaining that the Eddie Lee Banks convictions had been placed in Mr. Bilal's file by an employee of the Escambia County Sheriff's Office for Drs. Hodges and Benoit to review); *Burton v. Dep't of Children and Families Servs.*, No. 3:00-cv-00101, Dkt. #4 at 7 (N.D. Fla. 2000) (attaching the commitment petition).

Before trial on that petition, Mr. Bilal agreed, in May 2001, to be committed. *Id.* at 16. He did so based on the conditions that he would be "reviewed for release" every six months and that he would not have to register as a sex offender once released. *Id.* at 16-17 (explaining that, as he understood it, he would be "released immediately" upon "release recommendation from any doctor(s)"). According to Mr. Bilal, though, "timely reviews never materialized" under that agreement, and he had no reconsideration until at least November 2007, after he learned about the Eddie Lee Banks convictions being part of his file. *Id.* at 17-18; DE #30 at 20-21. At that point, Judge Terrell ordered the state to remove those convictions from his file and to reassess his commitment, as needed. DE #30 at 20.

This led to reassessment hearings in September 2013, March 2016, October 2017, and May 2019, when Mr. Bilal was finally released. *Id.* at 21; DE #20-1 at 16-17; *see also* DE #22 at 5 ("Dr. Douglas Shadle M.D. had for 12 years straight, steadfastly recommended my release."). Until that point, the State kept the Eddie Lee Banks

convictions as part of his clinical file, even though Judge Terrell had ordered them removed. DE #20-1 at 13 ("That neither of the above Defendants took any efforts to remove Eddie Lee Banks crimes from Plaintiff's clinical files and that those crimes always remained in Plaintiff's clinical file material to Plaintiff's civil commitment."). Because of that, and because the convictions never should have been in his file in the first place, and because he believes he never should have been tried on the sexual battery charge against Brenda Smith, he sued Dr. John Hodges, the Escambia County Sheriff's Office, and various other state officials in Florida state court in May 2021 for, among other things, malicious prosecution. DE #16 at 16; DE #20-1 at 17.

**Background to the Fourteenth Amendment claim.** Mr. Bilal previously sued several state officials for placing him in the Santa Rosa County jail for a month after he had his reassessment hearing in September 2013, alleging that doing so violated the Fourteenth Amendment. The district court dismissed that claim under Rule 12(b)(6), finding that he had no liberty interest in where he was housed. But this Court reversed, concluding that he stated a Fourteenth Amendment claim because the defendants had not yet proven—at the motion to dismiss stage—that the Santa Rosa County jail was the least restrictive means for housing him while maintaining public security. *See Bilal v. Geo Care, LLC*, 981 F.3d 903, 916-18 (11th Cir. 2020).

Before that decision was released, but after the claims underlying it, Mr. Bilal was temporarily placed in the FDOC's Reception and Medical Center and in the Escambia County jail. In particular, he was placed in the Reception and Medical Center for 45 days in 2016 after he resisted an officer at the Florida Civil Commitment Center. DE #20-1 at 16, 22; DE #30 at 24.[1] Similarly, when he attended his reassessment hearings in 2017 and 2019, he was placed in the Escambia County jail from October 22, 2017 to October 24, 2017, from February 28, 2019 to March 1, 2019, and from May 22, 2019 to May 23, 2019. DE #20-1 at 22; DE #30 at 24-25. Based on those stays, he again sued several state officials and the Escambia County Sheriff's Office in Florida state court, again alleging that they violated the Fourteenth Amendment. DE #16 at 13-15, 21; DE #20-1 at 14-16, 22.

**The removal motion and motions to dismiss.** Mr. Bilal served Dr. Hodges with the summons and complaint on February 8, 2023, and he served the Sheriff's Office with the same on February 10, 2023. DE #6-53 at 1; DE #6-58 at 1. The Sheriff's Office removed the case to the United States District Court for the Northern District of Florida on March 2, 2023, and Dr. Hodges consented to that removal on March

---

[1] Mr. Bilal's complaint states that this occurred in 2017. DE #20-1 at 16, 22. But the district court said it occurred in 2016, and the FDOC's "Corrections Offender Network" appears to confirm the district court's finding. *See* FDOC Corrections Offender Network, Jamaal A. Bilal, https://pubapps.fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=056332&TypeSearch=IR.

10, 2023—i.e., within 30 days of when the Sheriff's Office was served. DE #1; DE #6-61 at 1-2. The Sheriff's Office notified the district court of Dr. Hodge's consent that same day. DE #6 at 5.

Within a month of removing the case, both Dr. Hodge and the Sheriff's Office moved to dismiss Mr. Bilal's complaint. DE #17; DE #23. Dr. Hodge argued that he was entitled to immunity and that Mr. Bilal's malicious prosecution claim both failed on the merits and was barred by the four-year statute of limitations. DE #17 at 4-7. The Sheriff's Office also raised a statute-of-limitations defense against the malicious prosecution claim, and it argued more broadly that Mr. Bilal's complaint was a "shotgun" pleading, that the Sheriff's Office was "an entity which could not be sued," and that Mr. Bilal could not rely on respondeat superior or vicarious liability to hold the Sheriff's Office responsible for the actions of its employees. DE #23 at 5-15. Neither Dr. Hodge nor the Sheriff's Office claimed that any of Mr. Bilal's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* DE #17; DE #23. Nor did the Sheriff's Office address Mr. Bilal's Fourteenth Amendment claim. *See* DE #23.

**The district court's order.** The district court dismissed Mr. Bilal's malicious prosecution and Fourteenth Amendment claims. In particular, it found that the malicious prosecution claims were barred both by *Heck* and the four-year statute of limitations. DE #30 at 13-21 (report and recommendation); DE #33 at 1-2 (adopting the

7

report and recommendation). Then, for the Fourteenth Amendment claim, it found that Mr. Bilal's pre- May 2017 jail stays were time barred and that his post- May 2017 jail stays were non-punitive and too short in duration to state a claim. DE #30 at 23-25. Finally, at the end of the court's order, in its "recommendations" section, it relied on its "inherent authority" to dismiss all claims against the unserved defendants as "frivolous," without explaining the basis of its frivolity ruling. *Id.* at 7, 27. Mr. Bilal timely appealed. 11th Cir. DE #1.

## Standard of Review

This Court reviews an order granting a motion to dismiss for failure to state a claim de novo, and it accepts the fact allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 908-09 (11th Cir. 2020). Whether a district court has the inherent authority to dismiss claims as frivolous (see Section IV) is a legal conclusion that this Court reviews de novo. If the district court had that authority here, this Court reviews its exercise of that authority for abuse of discretion. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1328 (11th Cir. 2002) ("The exercise of the court's inherent powers is reviewed for abuse of discretion. However, a determination as to the scope of those powers is a legal conclusion, and as such is reviewed *de novo*.").

## Summary of the Argument

Jamal Bilal spent 20 years at the Florida Civil Commitment Center based in part on convictions that belonged to Eddie Lee Banks, and while he was there he was periodically transferred to prisons or jails that he says were not the least restrictive means for housing him. Within two years of being released, he sued multiple state officials in state court under § 1983 for malicious prosecution and Fourteenth Amendment violations. The served defendants removed the case to federal court, and it dismissed his complaint by finding: that his malicious prosecution claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and the four-year statute of limitations for § 1983 actions; and that his relevant jail stays were too short to state a Fourteenth Amendment claim. Then, at the end of its order, the court concluded that it had the "inherent authority" to dismiss all claims against the unserved defendants as "frivolous." This Court should reverse for four reasons.

First, *Heck* does not bar the malicious prosecution claims. Specifically, the *Heck* bar is an affirmative defense and the defendants forfeited it by failing to raise it in their motions to dismiss. Also, unlike the plaintiff in *Heck*, Mr. Bilal was no longer in custody when he filed his § 1983 complaint, meaning that habeas relief was no longer available and that *Heck*'s concern over inconsistent remedies was no longer an issue. For those basic reasons, *Heck* does not apply.

Second, the four-year statute of limitations for § 1983 actions does not bar the malicious prosecution claims, either. Mr. Bilal alleges that his commitment was void from the very beginning and that he suffered ongoing harm for 20 years because some of the defendants repeatedly relied on the Eddie Lee Banks convictions to keep him detained. That is sufficient to invoke the continuing violation doctrine, which means that the statute of limitations did not begin to run until he was released. Because he ultimately sued within two years of his release, his complaint was timely.

Third, Mr. Bilal stated a plausible Fourteenth Amendment claim based on his temporary placements in the Escambia County jail during his civil commitment. The district court found otherwise by saying that the stays were non-punitive and too short, but that finding cannot be reconciled with this Court's decision on the same issue in one of Mr. Bilal's previous appeals, where it explained that such a defense *might* work at summary judgment, but not in the context of a motion to dismiss.

Finally, the district court stated that it had the "inherent authority" to dismiss all claims against the unserved defendants as "frivolous." But no binding authority from this Court or the Supreme Court acknowledges that authority, and, even if it exists, the district court abused it here because the court did not explain, at all, why the claims against the unserved defendants were frivolous.

## Argument

Jamaal Bilal spent 20 years in the Florida Civil Commitment Center based in part on someone else's convictions for child molestation, and, during his commitment, he was periodically transferred to prisons or jails that he claims were not the least restrictive means for detaining him. DE #20-1 at 12, 14. So, when he was released, he sued Dr. John Hodge, the Escambia County Sheriff's Office, and others for malicious prosecution and violations of his Fourteenth Amendment right to not be punished during civil commitment. DE #16; DE #20-1. The district court ultimately dismissed his claims against Dr. Hodge and the Sheriff's Office under Rule 12(b)(6), finding: that his malicious prosecution claims were barred by both *Heck v. Humphrey*, 512 U.S. 477 (1994) and the four-year statute of limitations for § 1983 actions; and that his prison and jail stays were either time barred, non-punitive, or too short in duration to state a Fourteenth Amendment claim. DE #30 at 13-21, 23-25 (report and recommendation); DE #33 at 1-2 (adopting the report and recommendation). Then it concluded that it had the "inherent authority" to dismiss all claims against the unserved defendants because those claims were "frivolous." DE #30 at 7, 27; DE #33 at 1-2. For the following reasons, we respectfully ask this Court to reject each of those decisions and remand Mr. Bilal's case to the district court.

I. **The *Heck* bar does not apply to Mr. Bilal's malicious prosecution claims because the defendants did not raise it and because Mr. Bilal was not in custody when he filed his complaint.**

The Supreme Court, in *Heck*, directed courts to dismiss § 1983 complaints that, if successful, would call into question the validity of a plaintiff's detention. *See Heck*, 512 U.S. at 487. Here, the district court relied on that directive to dismiss Mr. Bilal's malicious prosecution claims, but doing so was wrong for two reasons. First, the *Heck* bar is an affirmative defense that the defendants forfeited when they failed to raise it. Second, *Heck* does not apply to a plaintiff, like Mr. Bilal, who was no longer in custody when he filed his § 1983 complaint.

A. **The defendants forfeited any *Heck* affirmative defense.**

When Dr. Hodge and the Escambia County Sheriff's Office moved to dismiss Mr. Bilal's malicious prosecution claims, they did not cite *Heck* or argue that his claims, if successful, would undermine the validity of his civil commitment. *See* DE #17; DE #23. Instead, all either of them said—in Dr. Hodge's motion—was that Mr. Bilal could not satisfy the "favorable termination" element of a malicious prosecution claim. DE #17 at 5-6. In other words, instead of arguing that *Heck* barred his claims, they instead argued that the claims failed on the merits. *Id.*

To be safe, Mr. Bilal nevertheless said in response to Dr. Hodge's motion that "[i]t *appears* that defendant Hodges is attempting to transformize this case into one of

a *Heck v. Humphrey*, 512 U.S. 477 (1994) matter." DE #22 at 9-10 (emphasis added) (explaining why he believed *Heck* does not apply). But neither Dr. Hodge nor the Sheriff's Office ever confirmed or denied Mr. Bilal's speculation, as neither filed a reply. So, the only mention of *Heck* prior to the district court's decision came from Mr. Bilal himself. *See id.*

Still, the district court relied on *Heck* to dismiss Mr. Bilal's malicious prosecution claims, finding that his claims "necessarily imply the invalidity of his detention." DE #30 at 14. That was a mistake, though, because the *Heck* bar is an affirmative defense that is forfeited if not raised by the defendants. Because of that, we respectfully ask this Court to reject its decision. *See Crittindon v. LeBlanc*, 37 F.4th 177, 190 (5th Cir. 2022) ("When it comes to *Heck* in particular, our court and others have recognized that it is a defense a party must assert as opposed to some sort of jurisdictional bar."); *Topa v. Melendez*, 739 Fed. Appx. 516, 518 & n. 1 (11th Cir. 2018) (treating *Heck* as a forfeitable affirmative defense).[2]

---

[2] There is a "minority view" that *Heck* created a jurisdictional rule. *See Topa*, 739 Fed. Appx. at 518 & n. 1 (citing cases). This Court once indicated in dicta that it favored that view. *See Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018). But the Court has "more recently called that proposition into serious doubt." *See Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191 n.4 (11th Cir. 2020); *Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020) (stating that while this Court had "not definitively answered" the question, "the Supreme Court's own language suggests that *Heck* deprives the plaintiff of a cause of action—not that it deprives a court of jurisdiction").

In *Topa*, for example, the plaintiff sued a sheriff's deputy and a correctional officer for wrongful arrest, unreasonable seizure, false imprisonment, and conspiracy after he pled no contest to violating a temporary restraining order and served jail time. *Topa*, 739 Fed. Appx. at 517. The defendants moved to dismiss his complaint under Rule 12(b)(6), arguing that he had "failed to plead viable claims under § 1983." *Id.* Then, before the district court ruled on that motion, the defendants moved for summary judgment, arguing that the plaintiff's claims were barred by *Heck* because they called into question the validity of his detention. *Id.* Ultimately, the district court dismissed the case under Rule 12(b)(6), adopting the *Heck* argument from the defendants' summary judgment motion. *Id.* at 517-18. But this Court reversed, in part because the defendants never raised the *Heck* argument in their motion to dismiss. *Id.* ("[C]ourts generally lack the ability to raise an affirmative defense sua sponte.").

The outcome should be the same here. Neither defendant raised *Heck* in its respective motion to dismiss; instead, the district court raised *Heck* sua sponte. The district court did not have the right to do that, though, and we respectfully ask this Court to reverse its decision. *See Crittindon*, 37 F.4th at 190; *Topa*, 739 Fed. Appx. at 517-18; *see also Bell v. Raoul*, 88 F.4th 1231, 1234 (7th Cir. 2023) ("To be sure, *Heck* did not announce a jurisdictional rule, but instead more of an affirmative defense that can be waived by an opposing party or sidestepped by a district court

if it wishes to reach the merits of a claim."); *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) ("[C]ompliance with *Heck* most closely resembles the mandatory administrative exhaustion of PLRA claims, which constitutes an affirmative defense and not a pleading requirement.").

**B. *Heck* does not apply to plaintiffs who are no longer in custody.**

Another reason *Heck* does not apply here—one that has divided the circuits and panels of this Court—is that *Heck*, unlike this case, involved an inmate whose § 1983 claims were inconsistent with the exclusive remedy that Congress subsequently provided in the federal habeas corpus statute. Because Mr. Bilal was no longer an inmate when he filed his complaint, habeas relief was no longer available, meaning that the possibility of inconsistent remedies was no longer a concern. That being the case, *Heck* should not bar his malicious prosecution claims.

To fully understand why, some background on *Heck* and the post-*Heck* circuit split is necessary. Specifically, the plaintiff in *Heck* was an inmate who sued state officials under § 1983 for damages related the investigation that led to his arrest and incarceration. *Heck*, 512 U.S. at 478-79. The question his case raised was whether, as an inmate, his damages claims were cognizable under § 1983 when, if successful, they would imply the invalidity of his conviction. *Id.* at 480-81. The Supreme Court ultimately held that they were not because Congress provided an exclusive remedy for

such claims through the federal habeas corpus statute. *Id.* at 480-81, 486-87 ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

Since *Heck*, the circuits have split over whether *Heck* applies only to plaintiffs who are still in custody and thus still eligible for habeas relief. Some say yes, some say no, and some take a hybrid approach that applies *Heck* to out-of-custody plaintiffs if they had a chance to pursue habeas relief while incarcerated. *See Wilson v. Midland Cty., Texas*, 89 F.4th 446, 457-58 (5th Cir. 2023) (counting six that limit *Heck* to inmate claims and five that do not), *rehearing en banc granted by Wilson v. Midland Cty., Texas*, 92 F.4th 1150 (5th Cir. 2024); *Guerrero v. Gates*, 442 F.3d 697, 704-05 (9th Cir. 2006) (adopting the hybrid approach).

This split is based largely on Justice Souter's concurring opinion in the post-*Heck* decision *Spencer v. Kemna*, 523 U.S. 1 (1998). There, Justice Souter cited back to his concurring opinion in *Heck* and emphasized that "a former prisoner, no longer 'in

custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21; *see also Heck*, 512 U.S. at 497-503 (Souter, J., concurring) ("I would not cast doubt on the ability of an individual unaffected by the habeas statute to take advantage of the broad reach of § 1983."). Four other justices in *Spencer* ultimately agreed with Justice Souter on this point. *See, e.g., Spencer*, 523 U.S. at 21 (Ginsburg, J., concurring) ("I have come to agree with Justice SOUTER's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'"). Ever since, the circuits have been deeply divided on what to do with the five justices' general agreement on this question.

That division has affected this Court, too, as several panels have taken conflicting positions. For example, at least three panels in published opinions have suggested that *Heck* does not apply to § 1983 damages claims by plaintiffs who cannot pursue habeas relief. *See Harden v. Pataki*, 320 F.3d 1289, 1298 (11th Cir. 2003) (relying on Justice Souter's concurrence to conclude that "where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be"); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1315 n.9 (11th Cir. 2005) ("Abusaid's 60–

day suspended jail sentence and 18–month probation term, imposed in September 2000, should now be long over. If this is the case, habeas relief is not available to him, and thus he may be entitled to bring a § 1983 suit."); *McLish v. Nugent*, 483 F.3d 1231, 1252 n.19 (11th Cir. 2007) ("Holmberg correctly cites to [*Abusaid*] for the proposition that the Supreme Court has apparently receded from the idea that *Heck*'s favorable-termination requirement also applies to non-incarcerated individuals."). Meanwhile, at least two panels in unpublished opinions have suggested that *Heck* continues to apply to plaintiffs who have been released from custody. *See Vickers v. Donahue*, 137 Fed. Appx. 285, 290 (11th Cir. 2005) ("[W]e conclude that the *Heck* bar applies to Vickers's claim despite the unavailability of habeas relief."); *Christy v. Sheriff of Palm Beach Cty., Florida*, 288 Fed. Appx. 658, 666 (11th Cir. 2008) (same). In short, like its sister circuits, this Court has issued inconsistent decisions on this question. *See Topa*, 739 Fed. Appx. at 519 n.2 (recognizing the conflicting approaches).[3]

---

[3] *Topa* also says that another Eleventh Circuit panel, in a published opinion, "suggested a middle ground—that application of *Heck* turns on whether the plaintiff had a meaningful opportunity to file for habeas relief while incarcerated." *Topa*, 739 Fed. Appx. at 519 n.2 (citing *Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (2010)). But the *Morrow* panel it cited rejected that suggestion. *Morrow*, 610 F.3d at 1272 n.* ("We say nothing about potential cases in which ample time was available, although the law might ultimately not turn on that circumstance."). Still, at least one other panel has relied on this "middle ground" approach in an unpublished opinion to find that the *Heck* bar applied. *See Reilly v. Herrera*, 622 Fed. Appx. 832, 834 (11th Cir. 2015).

That said, and with apologies for the lengthy background, we respectfully ask this Court to follow the approach suggested in *Harden*, *Abusaid*, and *McClish* for three basic reasons. First, *Heck* only sought to prevent conflicting judgments at the "intersection" of § 1983 and the federal habeas corpus statute. *Heck*, 512 U.S. at 480-86. Put another way, *Heck* applies only when both § 1983 and habeas corpus are parallel remedies that could, if successful, invalidate a conviction or sentence. *Id.*; *see also McDonough v. Smith*, 588 U.S. 109, 119 (2019) ("Emphasizing the concerns with parallel litigation and conflicting judgments just discussed, the Court in *Heck* held . . . ."). That matters here because once a plaintiff is no longer in custody, habeas relief is categorically unavailable and parallel litigation (with its potential for conflicting judgments) is no longer a concern. At that point, if the statute of limitations on a § 1983 claim has not run, the plaintiff is entitled to pursue that claim through § 1983 just like everyone else. *See Heck*, 512 U.S. at 480-81, 483, 489 (emphasizing that § 1983 does not require plaintiffs to exhaust state habeas remedies); *see also* 42 U.S.C. § 1983 (broadly recognizing that "[e]very person" who violates the Constitution under color of state law "shall be liable" for the "deprivation of any rights").

Second, since *Heck*, the Supreme Court has twice stated that "§ 1983 contains an 'implicit exception' for actions that lie 'within the core of habeas corpus.'" *Nance v. Ward*, 597 U.S. 159, 167 (2022) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79

(2005)). Implicit within that statement is the idea that § 1983 "must be" available when the habeas statute is not. *See Harden*, 320 F.3d at 1298; *Abusaid*, 405 F.3d at 1315 n.9 ("*Wilkinson*'s discussion of an 'implicit habeas exception' suggests that *Heck* may create nothing more than an exception to the availability of § 1983 relief in cases in which habeas provides a remedy."). That being the case, § 1983 "must be" available here because habeas relief is not, and the district court was thus wrong to extend *Heck* to dismiss Mr. Bilal's claims. *See Nance*, 597 U.S. at 167; *Wilkinson*, 544 U.S. at 79.

Finally, courts that apply *Heck* when habeas relief is unavailable overread Justice Scalia's statement in footnote 10, where he suggested that the *Heck* bar is "not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490 n.10. The plaintiff in *Heck* was an inmate, so footnote 10 was not necessary to the decision, making it dicta and thus an "unreliable" guide. *See id.* at 482, 490 n.10. In fact, Justice Scalia made the statement after admitting that he could think of "no real-life example[s]" of cases "involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges." *Id.* at 490 n.10. Time has since shown that such examples "abound," making his statement "improvident." *Wilson*, 89 F.4th at 458, *rehearing en banc granted by Wilson*, 92 F.4th at 1150. That, indeed, is why Justice Ginsburg (and three other Justices) later

joined Justice Souter's post-*Heck* concurrence in *Spencer*, agreeing that individuals who are ineligible for habeas relief "fit within § 1983's 'broad reach.'" *Spencer*, 523 U.S. at 21 ("Mindful of 'real-life examples,' among them this case, I have come to agree with Justice SOUTER's reasoning." (cleaned up)). Consistent with that, we respectfully ask this Court to find that the "broad reach" of § 1983 applies here given that the habeas statute does not. *See id.*; *see also DeWalt v. Carter*, 224 F.3d 607, 616-17 (7th Cir. 2000) ("[W]e, like the Second Circuit in *Jenkins*, are hesitant to apply the *Heck* rule in such a way as would contravene the pronouncement of five sitting Justices.").

## II. The statute of limitations has not run on Mr. Bilal's malicious prosecution claims that are based on his stay at the Florida Civil Commitment Center.

When the State of Florida decided to evaluate Mr. Bilal for possible civil commitment in 1999, someone from the Escambia County Sheriff's Office placed child-molestation convictions for Eddie Lee Banks in his clinical file. DE #20-1 at 13 (explaining that Dr. Hodge and others relied on those convictions when deciding to send him to the Florida Civil Commitment Center). Though Mr. Bilal subsequently consented to being committed in 2001, he did so before learning that he was being recommended for commitment based on those convictions. *Id.* at 16-20. He alleges that the convictions remained in his file and were "material" to his continued detention until

he was released in May 2019. *Id.* at 13. Because of that, he sued Dr. Hodge, the Sheriff's Office, and others[4] in May 2021 for malicious prosecution. *Id.*

The district court dismissed his malicious prosecution claims, finding that they were outside § 1983's four-year statute of limitations. DE #30 at 17-21 (reasoning that the clock began to run when he learned about the convictions being part of his clinical file and that he could not rely on the "continuing violation" exception because a state court had ordered the convictions to be purged from his file in 2007 and because none of the orders from his subsequent detention hearings relied on the convictions). We respectfully ask this Court to reject that decision. *See, e.g., Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295 (11th Cir. 2022); *Smith v. Shorstein*, 217 Fed. Appx. 877 (11th Cir. 2007).

In *Shorstein*, for example, the plaintiff's prison sentence expired in February 1999, but state officials detained him beyond that date to evaluate him for civil commitment as a sexually violent predator. *Shorstein*, 217 Fed. Appx. at 878-79. Because one condition of civil commitment is that the person has to be "lawfully incarcerated" at the time of commitment, he sued the state officials under § 1983 after he was released. *Id.* The district court dismissed his suit based on § 1983's four-year statute of

---

[4] The "others" include unserved defendants Dr. Jeffrey Benoit, Dr. Carole DePass, Dr. Danielle Koskey, Dr. Karen Parker, Dr. Gregory Pritchard, and Dr. Donald Sawyer. DE #20-1 at 13-14.

limitations, finding that the limitations period began to run when he was detained beyond the expiration date of his prison sentence and that he did not sue until April 2006, more than four years later. *Id.* This Court reversed, though. In particular, it acknowledged the general rule that the statute of limitations begins to run when the plaintiff knew or should have known about the unlawful conduct. *Id.* at 881. But then it acknowledged a "continuing violation" exception where the clock does not begin to run until the unlawful conduct ceases. *Id.* It then applied that exception to the plaintiff's case because the unlawful conduct (wrongful commitment) did not cease until he was released in April 2002, giving him four years from that date to sue. Because he sued within that time frame, the statute of limitations did not bar his claim. *Id.*; *see also Donaldson v. O'Connor*, 493 F.2d 507, 528-29 (5th Cir. 1974) ("In the case of false imprisonment, the tort action this case most resembles, the cause of action does not accrue until the release of the imprisoned party.") *vacated on other grounds by O'Connor v. Donaldson*, 422 U.S. 563 (1975).

Similarly, in *Swearingen*, the plaintiffs challenged Florida's sex-offender registry by, among other things, claiming that it injured their reputations and required them to undertake burdensome tasks such as periodic re-registrations. *Swearingen*, 51 F.4th at 1306-07. The State argued that these claims were barred by the statute of limitations because the plaintiffs' information had been publicly available "since an early version

of the registry law" and they had been required to register "since the registry law's initial version," both of which had been enacted "many years" outside the limitations period. *Id.* at 1307-09. This Court rejected that argument, though, finding that even if the plaintiffs' claims initially arose outside the limitations period, they could invoke the continuing violation doctrine because the State was "send[ing] officers to the plaintiffs' neighborhoods to verify where they lived on an ongoing basis" and "threat[ening] enforcement of the registration and re-registration requirements." *Id.* Thus, these claims were timely. *Id.* at 1305, 1307-09 ("If a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations.").

The result should be the same here. Mr. Bilal alleges that the State wrongfully recommended civil commitment based on the Eddie Lee Banks convictions, that he would not have consented to civil commitment had he known that the State was relying on those convictions, and that the convictions remained a "material" part of his clinical file until he was released in May 2019. DE #20-1 at 13, 16-20. Put another way, he alleges, like the plaintiff in *Shorstein*, that his commitment was void from the very beginning, and he alleges, similar to the plaintiffs in *Swearingen*, that he suffered ongoing harm for 20 years because some of the defendants repeatedly relied on the Eddie Lee Banks convictions to keep him detained. *Id.* That is sufficient to invoke the

continuing violation doctrine, and, because he ultimately sued within two years of his release, his complaint was timely. *See Swearingen*, 51 F.4th at 1307-09; *Shorstein*, 217 Fed. Appx. at 881; *Donaldson*, 493 F.2d at 528-29.

To get around that conclusion, the district court said that Judge Terrell ordered the State to purge the Eddie Lee Banks convictions from Mr. Bilal's clinical file in 2007 and that no subsequent detention order relied on those convictions, thus "sever[ing] any conceivable connection between Defendants' alleged consideration of the Eddie Lee Banks' convictions and [Mr. Bilal's] ongoing commitment."[5] That presents three problems.

First, it says nothing about Mr. Bilal's claim that he was committed under false pretenses, making his commitment void from the outset. That claim, if accepted, means that the statute of limitations would not begin to run until he was released. *See Shorstein*, 217 Fed. Appx. at 881; *Donaldson*, 493 F.2d at 528-29. While Dr. Hodge and the Sheriff's Office may argue that this is beside the point because Mr. Bilal ultimately

---

[5] The district court also rejected Mr. Bilal's argument that he was not in lawful custody at the time the State recommended his civil commitment. His argument was based on the idea that the U.S. District Court for the Northern District of Florida had ordered him to be released on August 9, 1999. DE #30 at 19 n. 9. But that court had ordered his release only if the State did not allow him the opportunity to file a belated appeal related to the conviction for which he was serving time. He filed that appeal—with no objection from the State—on August 6, 1999. *See Bilal v. Moore*, Case No. 3:98-cv-179 (N.D. Fla. May 12, 1998), Dkt. #s 151, 182, 186, 187, 191, 192, 199, 200, 203, 210.

consented to being committed, that does not matter. He agreed to be committed to avoid being labeled a sex predator upon release and to obtain review of his case every six months instead of every year as contemplated by the statute. DE #20-1 at 16; Fla. Stat. § 394.918(1). And more importantly, the point is that he never would have been recommended for commitment in the first place (and been faced with the choice of whether he should consent to being committed) had the State not falsified his files. DE #20-1 at 13, 16-20. That should be enough to invoke the continuing violation doctrine and make his claims timely. *See Shorstein*, 217 Fed. Appx. at 881; *Donaldson*, 493 F.2d at 528-29.

Second, in finding that Judge Terrell's order to purge the Eddie Lee Banks convictions from Mr. Bilal's clinical file precluded Mr. Bilal from relying on the continuing violation doctrine, the district court failed to accept Mr. Bilal's allegations as true. *See* DE #30 at 20-21. In particular, Mr. Bilal alleged that "those crimes always remained in [his] clinical file material to [his] civil commitment" and that "their failure to eradicate such crimes from his treatment files was the []proximate cause why [he] served 20 years in civil commitment." DE #20-1 at 13. At the motion to dismiss stage, the district court should have accepted those allegations and relied on them when deciding whether to dismiss his claims based on the statute of limitations—even if it did not believe the allegations were true. Its failure to do that merits remand. *See Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that fact allegations should be taken as true "even if doubtful in fact"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. District court judges looking to dismiss claims on such grounds must look elsewhere for legal support.").

Finally, instead of accepting those allegations, the district court looked beyond Mr. Bilal's pleadings and examined the post-2007 detention orders, finding that none of them relied on the Eddie Lee Banks convictions to justify Mr. Bilal's continued detention. DE #30 at 20-21. While district courts generally may take judicial notice of facts from state court dockets, they can do so only for facts that are "not subject to reasonable dispute," and they are supposed to attach the judicially noticed records to their orders "so as to ensure the inmate receives them." *Paez v. Sec'y, Fla. Dep't of Corrs.*, 947 F.3d 649, 651 (11th Cir. 2020) (cautioning that taking judicial notice is "a highly limited process"). That matters here both because the district court did not attach the post-2007 detention orders and because those orders, when examined, do not prove the point for which the district court was citing them.

Take the most recent order, for example. While the district court was correct in stating that it does not mention the Eddie Lee Banks convictions, that does not

mean that the state court, the state attorneys, or the doctors did not rely on the convictions to justify Mr. Bilal's continued detention. The order says, for instance, that the court considered testimony from Dr. Karen Parker and "the two most recent treatment progress reports from the FCCC." *See Curtis v. Burton*, 1999 CA 001507, Order Denying Release from Commitment Facility (Dec. 15, 2017). But the order does not attach those reports or a transcript of Dr. Parker's testimony, so we do not know, for certain, whether the Eddie Lee Banks convictions were a factor in either. In fact, one reason we mention this is because the State still lists "Eddie Banks" as one of Mr. Bilal's aliases on its Corrections Offender Network. *See* FDOC Corrections Offender Network, Jamaal A. Bilal, https://pubapps.fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=056332&TypeSearch=IR. It is not unfathomable, then, that state officials still associated the Eddie Lee Banks convictions with Mr. Bilal during the entirety of his commitment and relied on those convictions to justify his continued detention (even if they did not always make their reliance explicit).

Considering that, the district court at least should have given Mr. Bilal a chance to supplement the record with material contradicting the point that the court inferred from the post-2007 detention orders—just like courts ordinarily do when they consider materials outside the pleadings in the Rule 12(b)(6) context. *See Estate of Malkin v. Wells Fargo Bank, NA*, 998 F.3d 1186, 1201 (11th Cir. 2021) ("The District Court may

consider matters outside the pleadings in a Rule 12(b)(6) motion only by converting it into a Rule 56 summary judgment motion. But if the District Court converts the motion, it is required to notify the parties and give them 10 days in which to supplement the record."); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) (same). The district court deprived him of that opportunity, though, in part by failing to attach the detention orders when it took judicial notice.[6] That, too, warrants remand. *See Paez*, 947 F.3d at 651-52; *Estate of Malkin*, 998 F.3d at 1201; *Trustmark Ins. Co.*, 299 F.3d at 1267.

III. **Mr. Bilal has stated a plausible claim that the Escambia County Sheriff's Office violated the Fourteenth Amendment by temporarily placing him in a penal facility during his civil commitment.**

Mr. Bilal's complaint alleges that he was unconstitutionally placed in penal facilities during his civil commitment. Specifically, it alleges that he was placed in the Reception and Medical Center for 45 days in 2016 after he resisted an officer at the Florida Civil Commitment Center. DE #20-1 at 16, 22; DE #30 at 24. And it alleges that he was placed in the Escambia County jail from October 22, 2017 to October 24,

---

[6] Because the detention orders were not attached to the magistrate judge's report and recommendation, and because Mr. Bilal was not invited to supplement the record, his only real option in response to the report and recommendation was continuing to explain, in his objections, that the Eddie Lee Banks convictions remained part of his clinical file throughout his commitment. DE #32 at 6 (stating that he was committed for a "19 years' period" as "Eddie Lee Banks").

2017, from February 28, 2019 to March 1, 2019, and from May 22, 2019 to May 23, 2019, while he was attending hearings on whether he should still be civilly committed. DE #20-1 at 22; DE #28 at 9; DE #30 at 24-25. Based on those placements, he sued several state officials and the Escambia County Sheriff's Office, alleging that they violated the Fourteenth Amendment. DE #20-1 at 14-16, 22 (explaining that they failed to exercise professional judgment when placing him in a penal facility); DE #28 at 6, 8-9 (same).

The district court dismissed this claim on two grounds. First, it said that any stay that was more than four years before the date of his May 2021 complaint was time barred. DE #30 at 23-25. We do not dispute that decision. But second, it said that any stay that was not time-barred was either non-punitive or too short in duration to state a claim. *Id.* (reasoning that he did not "allege the conditions at the Escambia County Jail differed in any significant respect from the conditions at the FCCC" and that, "more importantly," his detentions were "of such short duration that they cannot be considered punitive"). With that decision, we disagree. *See Bilal v. Geo Care, LLC*, 981 F.3d 903 (11th Cir. 2020).

In *Bilal*, for instance, this Court addressed Mr. Bilal's month-long stay at the Santa Rosa County jail after a one-day detention hearing in September 2013. *Id.* at 916. Like here, Mr. Bilal argued that the stay violated the Fourteenth Amendment.

*Id.* at 916-17 (asserting that being housed at the jail "amounted to punishment" because he was deprived of access to goods and services that he could otherwise receive at a civil commitment facility). The district court dismissed his claim under Rule 12(b)(6), finding that he had no liberty interest in where he was housed. *Id.* at 916. But this Court reversed, concluding that he stated a Fourteenth Amendment claim because the defendants had not yet proven—at the motion to dismiss stage—that the Santa Rosa County jail was the least restrictive means for housing him. *Id.* at 917 ("[E]ven if the mentally ill represent a danger to themselves or others, they may not be housed in jails if less restrictive, secure options, such as a mental hospital or other health facility, are available.").

The same is true here for two reasons. First, the district court faulted Mr. Bilal for not alleging that the conditions at the Escambia County jail were subpar when compared to the conditions at the Florida Civil Commitment Center. DE #30 at 25. But just like in his previous case, Mr. Bilal alleged in his complaint that his stays in the Escambia County jail in 2017 and 2019 "amount[ed] to punishment." DE #20-1 at 14-16, 22 (equating the stays to the ones in his previous case). After that, the Sheriff's Office did not allege or attempt to show in its motion to dismiss that the Escambia County jail was the least restrictive means for housing him. DE #23 at 10. Instead, it

just said that "there are no facts alleged to support his contention." *Id.* So, in his response, Mr. Bilal again equated his stays at the Escambia County jail to his prior stay at the Santa Rosa County jail. DE #28 at 6. And he cited a DOJ report concluding that the Escambia County jail had "systematic deficiencies" that "continue to subject prisoners to excessive risk of assault by other prisoners and inadequate mental health care." *Id.* at 8. Those allegations—equating this case to his earlier one and citing the "systematic deficiencies" at the jail—are sufficient to state a plausible Fourteenth Amendment claim. *See Bilal*, 981 F.3d at 917 ("[T]he State bore the burden of achieving public security in housing Bilal by the least restrictive means—meaning it could not house Bilal at the jail unless no mental-health facility was both secure and within a reasonable distance of the Escambia County courthouse. Because Bilal was housed in a jail instead, he has sufficiently stated a Fourteenth Amendment claim for purposes of surviving a motion to dismiss.").

Second, the district court said that Mr. Bilal's stays at the Escambia County jail were too short to state a Fourteenth Amendment claim. DE #30 at 25. But this Court did not use time as a factor when denying the State's motion to dismiss in *Bilal*. Instead, it said—without qualification—that "the mentally ill may not be housed [in jails], even for security reasons, unless no less restrictive, secure option is available." *Bilal*, 981 F.3d at 917. Then it remanded for "further proceedings," explaining that "if the

State can demonstrate that housing Bilal for a month at the Santa Rosa County Jail represented the 'least restrictive means' for ensuring the safety and security of the public, it would be entitled to a judgment in its favor on Bilal's Fourteenth Amendment claim." *Id.* In other words, the Court concluded that once Mr. Bilal had alleged being placed in a jail with worse conditions than his civil commitment facility, the "onus" was on the State to prove that the jail was the best available option under the circumstances—something that could not happen at the motion to dismiss stage. *Id.* at 917-18. That same principle applies here, meaning that the district court was wrong to dismiss Mr. Bilal's claim based on the length of his stay. It will be up to the Sheriff's Office to show on remand that, under the circumstances (including the length of his stay), the jail was the best available housing option. This Court should thus remand this claim to the district court, where the Sheriff's Office will have a chance to make that showing. *Id.*

IV. **Even if district courts have the "inherent authority" to dismiss "frivolous" claims, the district court abused its discretion in exercising that authority here when it dismissed all claims against the unserved defendants.**

After removing Mr. Bilal's case to federal court, Dr. Hodge and the Escambia County Sheriff's Office each filed motions to dismiss. DE #17; DE #23. At the time, they were the only two defendants who had been served; a number of named defendants had not. *See* DE #20-1 at 1 (listing the defendants). We mention this because the

district court, in granting their motions to dismiss, went a step farther and relied on its "inherent authority" to dismiss all claims against the unserved defendants as well, deeming them "frivolous." DE #30 at 7, 27 (citing as the source of that authority *Guthrie v. U.S. Gov't*, 618 Fed. Appx. 612 (11th Cir. 2015) and *Davis v. Kvalheim*, 261 Fed. Appx. 231 (11th Cir. 2008)). This Court should reject that decision.

To begin, the threshold question of whether district courts possess "inherent authority" to dismiss frivolous claims in fee-paid cases appears to be unsettled in this Court. Both *Guthrie* and *Davis*—the cases cited by the district court—support that authority. *Guthrie*, 618 Fed. Appx. at 617; *Davis*, 261 Fed. Appx. at 234-35. But at least one other more recent panel concluded that it could find "no binding case law from this Court or from the United States Supreme Court recognizing a district court's inherent authority (one not tied to a specific Rule or Statute) to dismiss with prejudice a complaint—particularly without an opportunity to amend or to dismiss voluntarily without prejudice—on grounds that the complaint was patently frivolous or vexatious." *Smith v. HSBC Bank USA*, 679 Fed. Appx. 876, 879-80 (11th Cir. 2017); *see also Wilkerson v. Georgia*, 618 Fed. Appx. 610, 611 n.1 (11th Cir. 2015) (stating that the Court has not addressed this question in a published opinion). With that absence of supporting authority in mind, we believe the better practice is to reject this power and have district courts rely on sanctions under Rule 11 or, when applicable, the statutory

right to dismiss frivolous actions under § 1915(e) of the PLRA—each of which can be used to get rid of claims that district courts believe have no merit. *See Smith*, 679 Fed. Appx. at 879-80 and n.5.[7]

Either way, though, the Court need not settle that question here because the district court gave no explanation for why the claims against the unserved defendants were frivolous, thus abusing its discretion even if it possesses the authority it purported to exercise. Specifically, the district court stated that it had inherent authority to dismiss frivolous claims in its "legal standard" section, but it did not exercise that authority in its "discussion" section when analyzing any of Mr. Bilal's claims. *See* DE #30 at 7-27. Instead, in its "recommendation" section, after stating that all federal claims against Dr. Hodge and the Sheriff's Office should be simply "dismissed with prejudice," it stated without any explanation that "all federal claims against the *unserved* defendants should be dismissed with prejudice as frivolous." *Id.* at 27 (emphasis

---

[7] While district courts have authority to dismiss frivolous claims filed by in forma pauperis plaintiffs under the PLRA, 28 U.S.C. § 1915(e)(2)(B)(i), that authority does not apply here for two reasons. First, the district court did not attempt to invoke it. DE #30 at 7, 27; *Smith*, 679 Fed. Appx. at 880 n. 5 (refusing to reach this issue on appeal because "the district court in no way relied on its power to dismiss under section 1915(e)"). Second, it cannot apply because Mr. Bilal did not commence his action in federal court; the defendants removed it there and paid the filing fee, making § 1915(e)(2)(B)(i) inapplicable. *See Maldonado v. Baker Cty. Sheriff's Office*, 23 F.4th 1299, 1304-07 (11th Cir. 2022) (refusing to apply the PLRA's three-strikes rule under § 1915(g) in a case that was commenced in state court and later removed to federal court with the filing fee paid).

added). In other words, even though it did not treat the claims against Dr. Hodge and the Sheriff's Office as frivolous, it did treat, with no explanation, the claims against the unserved defendants that way. Failing to give any explanation on that score was an abuse of discretion, and this Court should reverse that decision. *See Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012) (stating that an abuse of discretion exists "when neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review"); *see also Neitzke v. Williams*, 490 U.S. 319, 324-30 (1989) (stating that frivolous claims include only "fantastic or delusional scenarios").

<u>Conclusion</u>

The district court prematurely dismissed this case, and we respectfully ask this Court to remand it for further consideration.

Date: July 23, 2024

Respectfully submitted,

/s/ Thomas Burch
Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
(706) 542-5236

## Certificate of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,140 words, excluding the parts of the brief carved out by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font.

/s/ Thomas Burch
Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
(706) 542-5236

## Certificate of Service

I, Thomas Burch, certify that I served this Appellant's Opening Brief via the Court's ECF system on July 23, 2024, and that I mailed 4 copies to the Clerk of the Court on the same date.

/s/ Thomas Burch
Thomas V. Burch
Appellate Litigation Clinic
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
(706) 542-5236